**LOCAL 71B GRAPHIC ARTS INTERNA-
TIONAL UNION, Plaintiff,**

**v.**

**EMPLOYING PRINTERS ASSOCIATION
et al., Defendants.**

**Civ. No. 74-111-2.**

United States District Court,
S. D. Iowa,
Central Division.

March 19, 1976.

Barbara J. Hillman, of Kleiman, Cornfield & Feldman, Chicago, Ill., and Donald W. Baird, of Baird, Bowers & Oliver, Des Moines, Iowa, for plaintiff.

Val L. Schoenthal, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, for defendants.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This is an action by a labor union to force the defendants, three employer-companies, to pay the full wage rate called for under a collective bargaining agreement for the period from February 15, 1973, through February 14, 1974. The defendants contend that regulations promulgated under Phase III of the Economic Stabilization Act of 1970 prohibited them from paying the full wage rate at the time the wages were due, and that to pay the full wages now would constitute a retroactive payment which they contend is prohibited by law. The parties' dispute centers around the validity of the actions of Charles J. McDonald (Director, Self-Administered Industries Division, Cost of Living Council), who purportedly authorized defendants to make the retroactive payments. In this action, plaintiff union is seeking to recover for its members the difference between the wages they actually received for the period from February 15, 1973, through February 14, 1974, and the wages called for under the collective bargaining agreement for that time period, which McDonald authorized to be paid. The lawsuit arises under the Economic Stabilization Act of 1970, as amended,[1] which grants this Court original jurisdiction over such disputes.

---

1. P.L. 91–379, 84 Stat. 799 (1970); set out as a note under 12 U.S.C. § 1904 (Supp.1976). § 210(a) of that Act granted subject matter jurisdiction in this case. The authority, however, contained in the Economic Stabilization Act, as amended, expired on April 30, 1974. Executive Order No. 11788, 3A C.F.R. 152 (Comp.1974), 12 U.S.C. § 1904, note, permitted the maintenance of any civil or criminal action pending on April 30, 1974. The complaint in the present case was filed on April 22, 1974.

Plaintiff's complaint also relies on § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, as a basis for jurisdiction. Since § 210(a) of the Economic Stabilization Act confers full jurisdiction on this Court, it need not rely on the Labor Management Relations Act as a basis for jurisdiction.

This cause is now before the Court on cross-motions for summary judgment under Rule 56(b), F.R.Civ.P. The facts are not in dispute. The relevant factual background is found in Executive Orders, federal regulations promulgated under Phase III, and the correspondence between plaintiff, defendants, and the Cost of Living Council. The executive orders, federal regulations and correspondence have been attached to the pleadings and made exhibits thereto. Both parties admit the validity of these documents; the only dispute is over the interpretation to be accorded them.

## FACTUAL BACKGROUND

The plaintiff, Local 71B, Graphic Arts International Union, AFL–CIO, hereinafter referred to as the "Union," is a labor organization representing certain employees in regard to their hours, wages and working conditions.

Defendants Bankers Printing Company, Commercial Printing, Inc., and Wallace-Homestead Co., are duly incorporated Iowa corporations engaged in the printing business in Des Moines, Iowa. The Employing Printers Association, hereinafter referred to as the "Association," is an association of printing companies. The Association represents the member-employers in connection with their collective bargaining relationships with all labor organizations.

On February 15, 1972, the Union and the Association entered into a collective bargaining agreement covering the wages, hours and working conditions of certain employees represented by the Union and employed by the employer-members of the Association. At that time, Phase II of the Economic Stabilization Program was in effect. Pursuant to Executive Order 11640, 37 Fed.Reg. 1213 (1972), Phase II imposed mandatory wage and price controls which prohibited the defendants Bankers, Commercial and Wallace from paying the full wage increase negotiated in the collective bargaining agreement. However, all other employer-members of the Association were allowed to pay the full wage increase by reason of a provision in the Economic Stabi-

lization Act which exempted "small businesses" from its control. On April 10, 1972, the Association petitioned the Internal Revenue Service for an exemption from the wage and salary standard limitations of 5.5 percent for the 1972 control year. This request for exemption was denied on April 14, 1972, and the Pay Board affirmed this decision on appeal.

Phase III was initiated on January 11, 1973. Under this Phase, "the standards for private behavior" to accomplish further reduction in the rate of inflation for the control year 1973 were "to be applied voluntarily and on a self-administered basis . . ." 6 C.F.R. § 130.11 (1974). That "the Phase III guidelines as to permissible wage increases were voluntary and adjustable for certain factors," has been recognized by the Temporary Emergency Court of Appeals. *United States of America v. State of California*, Em.App., 504 F.2d 750, 757 (1974), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2423, 44 L.Ed.2d 684, 43 U.S.L.W. 3645 (1975). These voluntary guidelines, however, were still subject to certain restrictions.

Section 130.6, Cost of Living Council Regulations, 6 C.F.R. § 130.6 (1974), imposed one such restriction on the allowable pay practices for contracts and specified wage and salary increases which were required to be reduced in a control year by reason of a Pay Board or Cost of Living Council decision and order pursuant to Phase II regulations. Section 130.6(a) made it unlawful for an employer to pay and employees to receive, without the prior approval of the Cost of Living Council, hereafter referred to as the "CLC," the negotiated wage rate or the increases scheduled under a contract during Phase III without reducing the negotiated wage rate or increases by an amount which reflected any reductions required in a prior control year under the same contract. The CLC thus intended that a reduction in one year of a contract would have a lasting effect and that only the increase originally scheduled for the subsequent contract year could be paid.

In the case at bar, the effect of § 130.6 on the collective bargaining agreement be-

tween the Union and the Association was to require the three employers to reduce wage rates or increases negotiated for the contract year 1973–1974 by the amount of the wage increase called for in the contract year 1972–1973 which the Pay Board, by its order of April 14, 1972, had prohibited the three defendants from paying during Phase II. Therefore, the 1972 reduction ordered by the Pay Board under Phase II continued to have implications for the defendants under the voluntary controls of Phase III which permitted them to implement only the wage *increase* called for in the 1973–1974 contract year.

An exception to § 130.6(a) was provided in § 130.6(b), however, and that exception is at issue here. Section 130.6(b) permitted in some instances, payment of wage or salary increases which did not reflect a prior Phase II reduction. Upon application to the CLC, the Council could approve payment of the full wage rate without reductions if the applicant demonstrated that historical relationships were distorted or gross inequities created as a result of a Pay Board or CLC decision and order.

Pursuant to this provision, plaintiff Union petitioned the CLC in a letter of June 22, 1973, for approval of payment of the full amount of wages negotiated in the collective bargaining agreement. Plaintiff in its application alleged that gross inequities had been created and historical relationships had been distorted within the meaning of § 130.6(b). Plaintiff asserted that as a result of the Pay Board's April 14, 1972 ruling, the employees of the three employers in this action received lower wage rates than other employees doing the same work, in the same labor market, under the same collective bargaining agreement, but who were employed by the two companies exempt from the Pay Board's regulation under the "small business" exemption. Plaintiff contends that this created a gross inequity, since the wages and salaries paid employees of all five employers have always been identical and governed by the same collective bargaining agreement and, therefore, the difference between the wages and salaries which the two groups of employers were allowed to pay in 1973 distorted a longstanding historical relationship.

Defendants responded to plaintiff's letter in a letter to the CLC on July 3, 1973, in which they made no objection to the form of application made by plaintiff. Defendants admitted that "[t]he facts set forth in the subject application are substantially accurate . . ." and noted some minor corrections that should be made, but did not add any substantial new facts to plaintiff's application. The letter did suggest, however, an additional way to resolve the inequity. Defendants drew attention to § 130.40(d), 6 C.F.R. 130.40(d) (1974), which required smaller employers to reduce their rates to the lower level, rather than to require the larger employers to pay the full amount of scheduled wages, as suggested by plaintiff in its application.

The CLC did not issue an opinion immediately, and under § 130.6(b), if no response is received from the CLC or its sub-bodies within 60 days after submission of the application, such application is to be considered approved. In a letter to plaintiff Union on October 8, 1973, however, the Association challenged the sufficiency of plaintiff's application for approval, which was not submitted on forms prescribed by the CLC as required by § 130.6(b). The Union then requested the CLC to clarify the silence by ruling on whether a proper application was made in the June 22, 1973, letter and, if so, whether the Council's silence intended approval. (Letter, October 26, 1973.) Charles J. McDonald, Director, Self-Administered Industries Division, responded in a letter of January 31, 1974, in which he purportedly accepted the adequacy of the application and approved the proposed wage increases. After the defendants questioned the propriety of paying the wage increase retroactively, McDonald issued another opinion on February 21, 1974, that reaffirmed approval of the proposed wages for the entire period from February 15, 1973 through February 14, 1974.

The "approved" wage rates have never been paid. Defendants refused to pay

them, contesting McDonald's authority to issue any such ruling, as well as the propriety of the ruling as made. Plaintiff initiated the present action on April 22, 1974, to recover amounts equal to the difference between the wages received by its employees and the wages called for in the collective bargaining agreement for the period from February 15, 1973 through February 14, 1974.

The parties' cross-motions for summary judgment raise the following issues: (1) whether Charles J. McDonald had authority to order approval of plaintiff's application for wage exemption under Phase III of the Economic Stabilization Act, as amended; (2) whether an application was properly made by plaintiff for approval of a wage exemption pursuant to § 130.6(b), of the Rules and Regulations of the Cost of Living Council; and (3) whether McDonald's grant of retroactive wage increases permitting payment of the full wage as set forth in the collective bargaining agreement was in accordance with Executive Order 11695, initiating Phase III and the rules promulgated thereunder.

After carefully considering the pleadings, affidavits, and applicable law, the Court concludes that the relief requested by the plaintiff should be granted.

## I. DELEGATION OF AUTHORITY

Defendants partially base their refusal to comply with the CLC's order of January 31, 1974, on an alleged lack of authority on the part of Charles J. McDonald to issue the order. Defendants contend that no showing of delegation of authority by the CLC to McDonald was made.

Congress enacted the Economic Stabilization Act of 1970, 12 U.S.C. § 1904, note, on August 15, 1970. Section 203 of that Act authorized the President to issue such orders and regulations as he deemed necessary to stabilize the economy. Section 204 gave him authority to delegate authority to such agencies as he deemed appropriate. Under § 2 of Executive Order 11615 of August 15, 1971, 36 Fed.Reg. 15727 (1971), the Cost of Living Council was established. Authority was vested in George P. Schultz as Chairman of the CLC by Executive Order No. 11723, 38 Fed.Reg. 15765 (1973). Effective June 14, 1973, George P. Schultz delegated all of his authorities and the authority to redelegate any authorities to the Director of the Cost of Living Council in CLC Order 29, 38 Fed.Reg. 16097 (1973). In CLC Order 40, 38 Fed.Reg. 22909 (1973), John T. Dunlop, Director of the Cost of Living Council, further delegated to the Administrator, Office of Wage Stabilization, authority to process, consider, decide and issue decisions and orders with respect to individual cases involving pay adjustments presented to the CLC under the policies, rulings and regulations of the Council in effect on and after July 12, 1973. Paragraph 8 of the order permitted each official to whom authority was delegated, which included the Administrator, Office of Wage Stabilization, to redelegate that authority. Thus, the delegation of authority as relates to specifically named officials can be traced through executive orders in the Federal Register as far as the Administrator, Office of Wage Stabilization.

In his sworn affidavit, Charles J. McDonald states that Donald Irwin was the Administrator, Office of Wage Stabilization; that pursuant to authority under 38 Fed.Reg. 22909 (1973), paragraphs 4 and 8, Irwin delegated McDonald as the Director, Self-Administered Industries Division; and that this delegation of authority was effective on January 31, 1974, and February 21, 1974, the dates when the order in question was issued.[2] Given McDonald's affidavit,

2. Defendants have moved to strike that portion of McDonald's affidavit which states:

"That authority was delegated to me on a number of different occasions including January 31, 1974, and February 21, 1974, by Donald Irwin, Administrator, Office of Wage Stabilization."

Defendants contend that this is an ultimate fact at issue which cannot be shown by stating it in an affidavit.

The Court, however, does not give McDonald's affidavit legally conclusive effect. The Court has made an independent study of the federal regulations to trace the line of dele-

the delegation of authority from the Cost of Living Council to McDonald is complete.

█ The chain of authority down to Administrator Irwin, as traced in the federal regulations, cannot be questioned. Irwin clearly had the power under 38 Fed.Reg. 22909 (1973) to delegate such authority as he did to McDonald. McDonald therefore had the proper authorization to issue the orders of January 31, 1974 and February 21, 1974.

The defendants have offered no affidavits which contradict the factual assertions of McDonald's affidavit, and the Court accepts McDonald's authority to issue the orders in question.

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Rule 56(e), F.R.Civ.P.; see *Lyons v. Bd. of Education of Charleston, Etc.,* 523 F.2d 340, 346 (8th Cir. 1975).

## II. ADEQUACY OF PLAINTIFF'S APPLICATION

In addition to challenging McDonald's authority to issue an order on behalf of the CLC, defendants assert that plaintiff's application to the CLC on June 22, 1973, was not in accordance with the proper administrative procedures for requesting a wage exemption, as set out under § 130.6(b) of Phase III regulations on May 30, 1973, 38

Fed.Reg. 14153. Section 130.6(b) provides in part:

An application for approval of such a rate or such an increase may be submitted to the Council on forms prescribed by and pursuant to instructions issued by the Council.

Pursuant to § 130.6(b), the CLC issued instructions that the Pay Board's Phase II Form PB–3 (or optional Form PB–3A, for units of fewer than 1,000 employees) was to be used until replacement forms were issued. 38 Fed.Reg. 14153 (1973). This rule was in effect at the time the Union requested an exemption in its letter to the CLC. Thus, plaintiff did not comply with the specific regulations.

Even though defendants corresponded with the CLC on July 3, 1973, the sufficiency of plaintiff's application was not challenged by the Association until October in the letter to the plaintiff. The Union responded immediately to the challenge by directing an inquiry on October 26, 1973, to the CLC regarding the sufficiency of the June 22 application. Charles McDonald answered the question directly in his letter of January 31, 1974, to defendants' attorney, in which it stated, "As you point out, no form PB–3 was submitted with such application. However, we note that you admit that the amount of the increase was approximately 9%. In addition, we believe the letters from Ms. Hillman and you have given us sufficient other facts regarding the situation. Accordingly, we see no reason why a PB–3 form should be required." In light of the CLC's specific acceptance of the application, the defendant's continuing challenge to the application's sufficiency must be based on the propriety of the agency's action.

gation of authority. The Court relied on McDonald's affidavit only for the factual statement that McDonald understood that he had been given a delegation of authority from Administrator Irwin, and not for the ultimate legal conclusion that McDonald possessed proper delegation. Defendants have not disputed McDonald's *factual* statements. Accordingly, the Court accepts McDonald's averments of fact to be correct, and denies defendants' motion to strike.

Defendants have also moved to strike certain portions of the affidavits filed by plaintiff's attorney which were made "on information and belief." In addition, they contend that the words "duly delegated and authorized" in the affidavit state an ultimate conclusion of law and should be stricken. The Court did not rely on the affidavit of plaintiff's attorney and therefore need not reach the issues presented in defendants' motion to strike.

The standard which the Court must apply in reviewing the agency's action is set forth in § 211(d)(1), 12 U.S.C. § 1904, note:

"[N]o order of such agency shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence."

The question thus becomes whether the CLC, through Mr. McDonald, acted in excess of its authority when the agency issued a decision and order on the basis of an application not submitted on the prescribed form.

■ The Court finds that the CLC did not act in excess of its authority in this situation. Phase II Form PB–3 was merely an administrative convenience which assured that the information needed to make a proper decision was submitted to the agency in an orderly fashion. If the agency felt that it had sufficient information on which to base its decision, its acceptance of an application not submitted on the proper forms should not be deemed to be in excess of its authority.

■ A standard of great deference is to be accorded to the interpretations of regulations and rulings issued by the administrative body. *Amalgamated Meat Cutters, etc. v. Cost of Living Council,* Em.App., 497 F.2d 1360 (1974); *University of Southern California v. Cost of Living Council et al.,* Em.App., 472 F.2d 1065 (1972), *cert. denied,* 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *United States v. Lieb,* Em.App., 462 F.2d 1161 (1972). McDonald's acceptance of the adequacy of this application indicates that the CLC did not interpret the requirement of the application's being submitted on a particular form as being so closely related to the purpose of § 130.6(b) as to justify dismissing an application when the requirement was not followed.

The Court finds that the Union's application and Association's letter of July 3 provided substantial information to the CLC on which it could base a decision. The prescribed application, PB–3A, requested specific information regarding wage adjustments. The Union's application enclosed a complete copy of the collective bargaining agreement, which included the wage increase schedule. It also included letters from the Internal Revenue Service regarding the original request for exemption under Phase II. Plaintiff supplied specific information to the agency regarding the total number employed by each of the five member-employers of the Association and as to the number of employees under each employer covered by the collective bargaining agreement. Plaintiff then reviewed the proceedings from February 15, 1972 until the time of the letter, pointing out how historical relationships had been distorted and gross inequities created. The CLC also had before it the Association's letter of July 3, corroborating the historical background and correcting, as to some aspects, the facts set forth in the Union's application. The Association's letter stated, "The increase provided by the collective bargaining agreement for the second year of the contract beginning February 15, 1973 was also approximately nine percent and substantially in excess of the 5.5 percent general wage standard," thereby admitting the percentage wage increase in question, one of the more important facts that the agency would use in its consideration.

■ Since the sole purpose of form PB–3A was to provide the CLC with adequate information to make its determination, and since the CLC had a great deal of information before it at the time it made its decision, the Court cannot say the CLC acted in excess of its authority by approving an application which was not on the proper form. Given the information which the agency had before it at the time of its decision, the Court finds that the CLC's decision was supported by substantial evidence.

### III. PROPRIETY OF THE CLC'S ORDER

As a final argument, defendants contend that even if the Court finds that Mc-

Donald's authority was demonstrated and that the application was sufficient, the retroactive increase requested by the Union is contrary to the collective bargaining agreement and applicable law and the defendants are therefore prohibited from paying it. Defendants base their nonpayment on § 3, Executive Order 11695, 3 C.F.R.Proc. 353 (1974), which confirmed and ratified all action under Phase II. They further deny that § 130.6 authorizes or permits retroactive pay increases and state that § 130.6 only permits prospective wage increases from the date of approval, which in this case would be January 31, 1974.

Defendants are correct in their contention that § 3, Executive Order No. 11695, confirms and ratifies actions taken under prior phases of the Economic Stabilization Program. The goals of Phase III, as enunciated in 6 C.F.R. 130.10 (1974), Phase III regulations, were to continue to reduce the rate of inflation in 1973 and establish general confidence in reasonable stability of prices beyond 1973. The standards to accomplish these goals were to be applied voluntarily and on a self-administered basis, 6 C.F.R. 130.11 (1974). *See, United States of America v. State of California, supra.* However, under § 3(d)(ii), Executive Order No. 11695, a prospective increase in wages and salaries under the terms of a contract subject to a prior Pay Board decision was not permitted, except to the extent permitted by the provisions of § 4(a). Section 4(a) permitted the CLC Chairman to prescribe definitions, make exceptions or grant exemptions and to issue regulations and orders. Thus, under the general provisions of Phase III, defendants were allowed to pay the negotiated wage *increase* for the year February 1973 through February 1974, as they did, but the wages paid had to be reduced by the amount disallowed by the Pay Board's decision under the prior control year, unless the Chairman of the CLC authorized an exemption or exception under § 4(a).

Such an exception was authorized on May 30, 1973, by § 130.6(b), the section plaintiff proceeded under, which reads as follows:

(b) *Application for approval.* In specific situations, payment of a wage or salary rate or a wage or salary increase which does not reflect a prior reduction, as required under paragraph (a) of this section, may be appropriate. An application for approval of such a rate or such an increase may be submitted to the Council on forms prescribed by and pursuant to instructions issued by the Council. Payment of such a rate or such an increase or a portion thereof may be approved only upon a demonstration by means of written documentation that historical relationships have been distorted or gross inequities have been created by a decision and order of the Pay Board or the Council or by operation of any regulation or ruling issued under the Economic Stabilization Program. Payment of such a rate or such an increase shall be considered to be approved by the Council if the Council takes no action with respect to such payment within 60 days after receipt of an application submitted under the provisions of this paragraph.

Defendants do not deny the validity of this provision or that the CLC had authority to issue such a regulation; rather they contend that § 130.6(b) permits only prospective wage increases from the date of approval, which would be January 31, 1974, the date of McDonald's letter.

There is nothing in § 130.6 to indicate whether such an increase could be granted retroactively, nor is there any prohibition against it. Other courts have not reached this issue. Defendants point to nothing in the rules and regulations issued by the CLC in support of their contention. Rather, they rest their case on omission of any retroactive provision in the regulation, in light of such provisions in other regulations.

However, in the absence of any specific lanaguage permitting or prohibiting retroactivity, the job of interpreting the omission must be left to the CLC, the agency which promulgated the regulations. Mr. McDonald of the CLC was well aware of the Association's concern about retroactivity; he specifically considered and then ad-

dressed the issue in his letter of February 21, 1974, in which he stated,

> You have raised a question as to whether wages may be paid retroactively for the control year prior to the date of the issuance of the spring regulations about May 30, 1974, as well as for the period between the issuance of those regulations and the date of our approval, January 31, 1974.
>
> The regulations issued May 30, 1973, were designed to deal with control years starting after January 10, 1973. Payment was approved for the full control year February 15, 1973—February 14, 1974. Thus payment may be made for the period of the control year prior to May 30, 1973, as well as for the period between the issuance of those regulations and January 31, 1974. This is consistent with counsel practice in cases such as this.

 Thus, in this case the agency has interpreted and considered the regulation; great deference must be given by the Court to such interpretation. *University of Southern California v. Cost of Living Council et al., supra*; *United States v. Lieb, supra*. The Court will not disturb the agency's decision unless it acted in excess of its authority. This was not the case here. The CLC's interpretation was not in contradiction of any existing rules and regulations. In fact, it appears to be consistent with § 130.6, which was made effective back to January 10, 1973, though not issued until May 30, 1973. The purpose of § 130.6(b) also supports the decision to grant the wage increases retroactively. The section was apparently designed to restore historical relationships and correct unfair hardships created as a result of a Pay Board decision. If that purpose was to be accomplished, then the grant of retroactive wages as well as prospective wages would seem to be necessary.

The CLC could proper find that gross inequities and distortion of historical relationships existed. The bookbinder-employees of the five member-employers of the Association had always been covered by the same collective bargaining agreement and had always received the same wages and benefits. This longstanding relationship was destroyed as a result of the "small business" exemption being available to only two of the five employers in the Union's bargaining unit. A possible hardship created by the disparity in the wages paid by the large and small employers was the creation of an enhanced market position for the larger manufacturers who had lower production costs as a result of paying lower wages. This seems to be the type of gross inequity which the CLC was given the power to eliminate in § 130.6(b).

Under these circumstances, the Court finds that the Cost of Living Council's decision issued by Mr. McDonald must be enforced and the relief requested by the Union granted.

Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is sustained.

IT IS FURTHER ORDERED that all other motions in this cause are overruled.